[No. 3522. Decided June 22, 1900.]

THE STATE OF WASHINGTON, *Respondent*, v. EDGAR HYDE, *Appellant*.

APPEAL—RECORD—INCLUSION OF AFFIDAVITS.

Affidavits and written statements will not be stricken from the transcript on appeal, when the trial court has certified that the same were presented to the court and passed upon on the hearing of a motion for a new trial and in arrest of judgment.

CRIMINAL LAW—ARREST OF JUDGMENT—GROUNDS.

The objection that the grand jury proceeded illegally in procuring evidence upon which to base an indictment cannot be raised by a motion in arrest of judgment, but should be presented at the earliest opportunity and before trial. It is too late to raise this question after verdict.

SAME—GRAND JURY—PRESUMPTIONS.

The presumption of law that a grand jury discharged its duties in a lawful manner cannot be overthrown by the unsupported affidavit of the accused.

SAME—TRIAL—PRESENCE IN COURT OF JOINT DEFENDANT.

Permitting the presence in court of one indicted jointly with the defendant, during the trial of the latter, does not constitute error.

SAME—EVIDENCE—RES GESTAE.

Upon the trial of a defendant indicted jointly with another for robbery, it is not error to permit the prosecuting witness, after identifying the accomplice of defendant, to testify that the accomplice was the man who shot him, since it is admissible as *res gestae* in detailing the circumstances of the robbery.

SAME.

Evidence introduced for the purpose of tracing the movements of the accused and one indicted jointly with him on the night of the robbery with which they are charged, both before and after the crime, by showing that they were in each other's company, carrying revolvers, in the vicinity of the robbery and elsewhere, is competent and relevant, although the testimony of a witness may incidentally disclose the commission of another crime.

SAME—NON-SUIT IN CRIMINAL CASES.

There can be no non-suit in a criminal case as in a civil case. The proper practice is to ask the court to direct an acquittal.

SAME—MOTION TO DIRECT ACQUITTAL—HOW FAR A CHALLENGE TO EVIDENCE.

Upon a motion to direct the acquittal of defendant on the ground of failure of proof, the only question raised is whether there is any evidence tending to prove the crime charged, not whether the evidence fails in some particular matters; and, since such motion challenges only the general sufficiency of the evidence, the supreme court on appeal will not consider objections to the sufficiency of the evidence in any particular which were not raised specifically in the lower court.

SAME—ROBBERY—INSTRUCTIONS.

A jury is warranted in finding defendant guilty of robbery, under instructions defining robbery, in the terms of the statute, as the forcible, felonious taking from the person of another, by putting in fear, "any article of value," and charging that before the jury could convict they must be convinced that the defendant took from the person of the prosecuting witness, forcibly, feloniously and by violence and by putting him in fear "money of the United States of the value of four dollars and twenty-five cents," although there was no evidence of the kind and amount

of money, but merely that defendant took the "money" of the prosecuting witness, since the word "money" imports value.

SAME—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

Where two persons have been indicted jointly as accomplices, but separately tried and convicted, one is not entitled to a new trial on the ground of newly discovered evidence, by reason of the affidavit of the other that the one seeking a new trial was not his accomplice but that he had refrained from testifying upon the other's trial for fear of prejudicing his own case; there being, moreover, no showing in the affidavit that the affiant on a new trial would testify to the matters set forth in his affidavit.

SAME—UNCORROBORATED STATEMENTS OF ACCOMPLICE.

New trials should not be granted on the uncorroborated statements of an accomplice.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. H. KEAN, Judge. Affirmed.

*Frank S. Carroll,* for appellant.

*Fremont Campbell,* for the State.

The opinion of the court was delivered by

WHITE, J.—The indictment in this case charges the appellant and one John Hildebrand with the crime of robbery, alleging that said appellant and Hildebrand, in Pierce county, "on the 3d day of July, 1899, then and there being, unlawfully and feloniously and forcibly did make an assault upon one George Hyde and then and there *four dollars and twenty-five cents, lawful money of the United States* of the value of four dollars and twenty-five cents, then and there being the personal property of him, the said George Hyde, from the person and against the will of the said George Hyde, feloniously, unlawfully, forcibly, by violence, and by putting the said George Hyde in fear, did take, steal, and carry away, with intent then and there the said property aforesaid feloniously to steal, contrary," etc.

The respondent's motion to strike certain affidavits and a written statement from the transcript must be denied, because the court certifies that the same were presented to the court and passed upon and examined on the hearing of the motion for a new trial and in arrest of judgment.

At the close of the testimony for the state, appellant moved the discharge of the appellant. Further on in this opinion we will discuss the points raised by this motion.

The appellant, after trial and verdict, filed a motion in arrest of judgment. One reason urged was, "Illegal proceedings of the grand jury in procuring evidence upon which to base grounds for the indictment." To sustain this motion, the appellant filed his own affidavit, to the effect that on two occasions he was brought before the grand jury who found the indictment, and examined in relation to the crime charged against him, and that he was not informed that the evidence he might give before the grand jury would be used against him, and that the indictment was found on the evidence thus given by him. Under our law but two grounds can be assigned for arrest of judgment: (1) No legal authority in the grand jury to inquire into the offense charged, *by reason of its not being within the jurisdiction of the court*; (2) that the facts stated do not constitute a crime or misdemeanor. § 6967, Bal. Code. This crime was committed in Pierce county, and was within the jurisdiction of the court. An inspection of the indictment shows that the facts stated constituted the crime of robbery. If the affidavit of the appellant concerning his presence and testimony before the grand jury is true, he should have presented his objections to the indictment at the earliest opportunity, and before the trial. It is too late to raise this question after verdict. Bishop, New Criminal Procedure, § 887. Although such an objection does not fall strictly within the language of § 6890, Bal. Code, prescribing the grounds of a motion to set aside an

indictment, it does appear from an inspection of the indict-
ment that the name of the appellant is not indorsed thereon
as a witness; and for this reason, if he had been before the
grand jury as a witness, under the section last cited he
could have moved to set aside the indictment, and possibly
he could have done so on the further grounds that the in-
dictment was not presented as prescribed by law. *People
v. Southwell,* 46 Cal. 141.

Again, the presumption of law is that the grand jury
discharged its duties in a lawful manner, and this pre-
sumption should not be overthrown by the unsupported
affidavit of the accused. Besides, this affidavit is flatly
contradicted by the affidavit of J. L. McMurray, deputy
prosecuting attorney. No evidence whatever of anything
that took place, or any statement of appellant before the
grand jury, was introduced at the trial. The motion in
arrest of judgment was therefore properly overruled.

The facts as disclosed by the testimony in this case are
as follows: Between nine and ten o'clock p. m., or ten
and eleven o'clock p. m., the evidence in this respect being
indefinite, of July 3, 1899, George Hyde, the prosecuting
witness, while traveling on foot between Lake View and
Edison, in Pierce county, in this state, on his way to Ta-
coma, was passed by two men on bicycles. Just as they
passed him, they threw their wheels down, came at the
prosecuting witness with drawn revolvers, both being
armed, and demanded his money. He refused to give up
his money and answered he would fight for it. One of
the men shot and missed him. One, that he positively
identified as Hildebrand, shot, and hit him in the hip, the
shot knocking him down. When he was down, Hilde-
brand's companion came around and went through the
witness's hind pocket *and took the witness's money,* while
Hildebrand held a revolver (called by the witness a "gun")
on his head, threatening to blow the witness's brains out.

Afterwards, how long the testimony fails to disclose, but while the witness was in the hospital, Hildebrand and the appellant were brought before him for identification. On the trial the witness was asked whether or not the appellant was one of the men who held him up, and he answered: "Well, he has that general appearance, but I am not positive that he is the man." But he was positive as to the other man. Hildebrand, on motion of the prosecuting attorney and by leave of the court, was brought into court and the prosecuting witness identified him as the man who shot him. On the same evening, July 3, 1899, Henry Mills Germaine, a witness called by the state, left Lake View twenty minutes after nine o'clock on his bicycle, to go to the asylum, and about a mile from Lake View, at about nine-thirty o'clock p. m., on a road between Lake View and a refreshment stand kept by a man by the name of Shousey, he met the appellant and Hildebrand and they had two "guns" (revolvers) apiece; that they came right up in front of him, and they both had revolvers in their hands,—in each hand,—and when they came up the witness stopped. The two men were going towards Lake View, walking. The testimony shows that it is between nine and ten miles from Tacoma to Lake View, and from Shousey's to Tacoma about the same distance. John Henry Kelley, a witness for the state, testified that between twelve m. of July 3, and one o'clock a. m., July 4, 1899, he saw the appellant and Hildebrand in the Yellowstone Saloon in Tacoma; that the witness left this saloon five minutes after he saw the appellant and Hildebrand there, to go to his home, and on Ninth and I streets he again saw the appellant and Hildebrand, and each had a gun in his hand. On cross-examination the following questions were asked by the appellant's attorney, and answered by the witness:

" Q.   How long did it take you to walk from the Yellowstone Saloon up to I street?

A.   Three or four minutes; probably five.

Q.   That would be half past twelve or twelve-thirty-five or forty?

A.   Yes, sir.

Q.   What did they say to you, Mr. Kelley, did you say?

A.   They told me to throw up my hands.

Q.   And you did?

A.   I certainly did.

Q.   How many guns did they have?

A.   They had one gun each, that is all I seen."

Henry McKency, a witness on behalf of the state, testified that on Monday afternoon, the 3d of July, 1899, he loaned the appellant his bicycle; that the appellant said something about going out to American Lake; that he next heard of his wheel at the city hall; and that a brother of the appellant about a week afterwards returned the wheel.   This witness further testified that, on the evening of July 3d, between eleven-thirty and twelve o'clock, at the Germania Hall bar room, in Tacoma, he saw the appellant and Hildebrand together; that Hildebrand had on guards that "you put around your legs to keep your pants from catching in the sprocket wheel;" that appellant and Hildebrand left the dance hall together, and remained away some fifteen or twenty minutes, and then came back together.   J. E. Sipes, a police officer, testified on behalf of the state that, on the night of the 3d and 4th of July, 1899, in Tacoma, about the hour of three-fifteen and three-thirty a. m., he saw the appellant and Hildebrand together on Thirteenth street, in Tacoma, and that each of them had a bicycle, and he and another officer named Wiley, after questioning them, arrested them on suspicion and searched them, taking from the appellant two guns (revolvers), and that Wiley took from Hildebrand two other guns (revolvers); that they were asked before their arrest

where they had been; that Hildebrand did most of the talking; that they seemed to be ignorant in regard to locality, and that they were asked if they had been out to the lakes; that in this conversation Hildebrand asked appellant, "What lake was that we were at?" that Hildebrand then acknowledged they had been out towards Spanaway Lake, and that the appellant made no denial of Hildebrand's statement; that appellant also stated that he had been at Germania Hall that night. Mr. Wiley, a police officer called by the state, testified, in substance, to the same effect as Sipes; and, further, that when he came on duty after eleven o'clock it was reported to him that a gentleman had been held up, and from the description of the offenders he stopped and arrested Hildebrand and the appellant; that three cartridges had been fired off; otherwise the revolvers were loaded with ball cartridges, and that each of the defendants named in the indictment had a small sum of money. There was no testimony whatever of any other robberies, further than might be inferred from the answer on cross-examination of the witness Kelley, heretofore quoted. The appellant testified in his own behalf that he had lived in Tacoma fourteen years; that on July 3d, about half past one or two o'clock in the afternoon, he got Hildebrand and went out to Wapato Lake on a bicycle, and stayed there until half past seven, when he and Hildebrand came back to Tacoma and together went to the Owl Theater and to the Lexington Saloon, where Hildebrand left him about nine o'clock or a quarter thereafter; that appellant stayed at the Lexington Saloon until half past eleven; then went to the Standard Theater; from there to the Manhattan Theater, where he remained until about fifteen minutes after twelve, when he went to Germania Hall, and that Hildebrand met him at about half past eleven or twelve o'clock, when he was leaving the Standard Theater; that Hildebrand "had come back

into town again;" that he stayed around Germania Hall until about two o'clock, when he and Hildebrand went down to the Lexington Saloon and left their bicycles there, then went to an oyster house together; came back after their bicycles and started for Germania Hall again, when they were arrested; that he never carried guns before in his life; that one of the guns he was taking up to have fixed; that with the other gun he intended to have some fun on the Fourth of July morning, and that he fired the exploded cartridges off in front of the Germania Saloon. The appellant called several witnesses to prove an alibi. One Fetterly testified to having seen the appellant between nine and ten o'clock of the evening of July 3d in the Standard dance hall. The cross-examination of this witness shows that from eight o'clock of that evening the witness was visiting saloons and dance halls, drinking frequently. From his evidence the jury had a right to conclude that the witness was drunk on the night of the 3d of July, and his memory from that cause was befuddled. George Higgs, another witness for appellant, who had charge of the boxes for the Owl Theater, testified that about a quarter to nine or nine o'clock of the evening of July 3d the appellant came to the theater and asked for one Gertie Felix, a box woman. One other witness testified that he saw appellant at Palace Hotel dance hall between eleven and twelve o'clock. Four others testified to seeing him at the Germania dance hall between twelve and one o'clock of the evening of July 3d. One other witness, Richard Burnett, called by the appellant, saw the appellant with Hildebrand at the Palace Hotel dance hall between half past eleven and twelve o'clock of the same evening.

The first error complained of is that the court erred in permitting Hildebrand, indicted jointly with the appellant, to be present in the court room during the trial of the

appellant, and thereby, in effect, he became a witness for the state. The record shows that Hildebrand was brought into court that the prosecuting witness might identify him as the person who acted jointly with the appellant in the robbery. The old rule that a defendant jointly indicted with the one on trial can not be a witness until the case as to himself is disposed of has been abrogated in this state. *Edwards v. State,* 2 Wash. 291 (26 Pac. 258). But Hildebrand did not testify. His presence was not testimony as to any fact in issue any more than the presence of any other man. No error was committed by the court in this respect.

The second error assigned is that the court erred in allowing the evidence of George Hyde, to the effect that Hildebrand was the man who shot him, and refusing to instruct the jury to disregard such testimony. The prosecuting witness, in detailing the circumstances of the robbery, testified that one of the robbers, whom he identified as Hildebrand, in the perpetration of the robbery shot him. The matter was properly before the jury, and the court did not err in refusing to instruct the jury to disregard such testimony. It is true, as shown by the record, that when Hildebrand was brought into court for identification, the prosecuting witness, who was on the stand testifying, voluntarily, and without being asked, said: "There is the man that shot me down. There is the man that held the gun over my face and said he would blow my brains out." This remark was, on motion of the appellant, stricken out. Subsequently, without objection further than to the presence of Hildebrand in court, the prosecuting witness testified that Hildebrand was the man who shot him. This evidence was a part of the *res gestae.*

"When a declaration, act or omission forms part of a transaction which is a fact in issue relevant to the issue, such declaration, act or omission is relevant if it tends to

explain or to show the purpose or character of the trans-
action." 3 Rice, Evidence, p. 126, § 81.

The third assigned error is that the court directed, in
the presence of the jury, that Hildebrand be brought back
for the purpose of assisting to identify the appellant. We
find nothing of the kind in the record, and Hildebrand
was not used as a witness for such purpose. It was, as
we have said, proper and relevant testimony for the prose-
cuting witness to identify and point out on the trial Hilde-
brand as the person who assisted in the robbery; for this
was followed up with testimony showing that appellant and
Hildebrand were together on the evening of the robbery,
in the vicinity of the place where the robbery occurred,
armed with revolvers, near the time it occurred, and were
seen together in Tacoma from about half past eleven
o'clock of that evening till three o'clock the next morning,
when they were taken in custody, each armed with re-
volvers and traveling with bicycles.

The fourth assignment of error, that the court permitted
H. M. Germaine, and the fifth assignment, that the court
permitted J. H. Kelley, to testify concerning other rob-
beries by appellant and Hildebrand on the same night, we
will consider together. It will not be denied that the
general rule is that it is not competent to show the com-
mission of another distinct crime by the defendant for the
purpose of proving that he is guilty of the crime charged.
But there are exceptions to this rule. There is nothing in
the testimony of Germaine that shows, or tends to show,
that a robbery was attempted on Germaine, or that he was
robbed. His testimony was simply to the effect that about
nine-twenty o'clock of the evening of July 3, 1899, about
a mile from Lake View, he saw appellant and Hildebrand
together, and that they had with them two "guns" apiece
in their hands; that he (witness) was riding a bicycle, and

saw them as they came up, and that the witness stopped.
No objection to this witness's testimony was made except
to one question, and that was; how he knew they had
"guns." The court overruled that objection, to which
ruling an exception was allowed, and the witness an-
swered: "Why, I was riding along towards them, and
they came right up in front of me, and they both had them
in their hands,—in each hand." There was no error com-
mitted in permitting an answer to the question objected
to, and it was certainly competent to show that the appel-
lant and Hildebrand were seen together with "guns" in
their hands, in the vicinity of where the robbery of Hyde
took place, a short time before that robbery. And that is
all that this witness's testimony proves or tends to prove.
J. H. Kelley testified, on his examination in chief, that
he saw the appellant and Hildebrand together on the night
of July 3d, a little after twelve o'clock, in the Yellowstone
Saloon, in Tacoma, and that he next saw them a few min-
utes after on Ninth and I streets, in Tacoma, with guns in
their hands. No objection to this testimony was saved.
The only objection interposed was to the question, "Did
you have any talk with Mr. Hyde, the defendant?" And
this question was not answered. It was certainly compe-
tent to trace the whereabouts of the appellant and Hilde-
brand on the night of the robbery, both before and after,
and to show that they had guns and were in each other's
company. That is all that this evidence, as brought out
by the state, tended to prove. On the cross-examination
appellant's counsel asked the question, "What did they
say to you, Mr. Kelley, did you say?" Answer: "They
told me to throw up my hands." From this one might
infer that a robbery was intended, but this was shown, not
by the respondent, but by the appellant, and the error, if
any, cannot be charged to the respondent.

The sixth error assigned is, "The court erred in refusing to grant defendant's motion for a non-suit and discharge the defendant, there being no evidence properly admitted connecting this defendant with the crime charged, and there being no evidence of a robbery having been committed." There can be no non-suit in a criminal, as in a civil, case. Bishop, New Criminal Procedure, § 961. The proper practice is to ask the court to direct an acquittal. *State v. Tamler,* 19 Ore. 531 (25 Pac. 71, 9 L. R. A. 853). The motion made here, as shown by the record, was "that the defendant be discharged from the charge set out in this indictment." This was in effect a motion to direct the acquittal of the defendant, and we shall so consider it. But four grounds were urged in the motion. Two objections,—the presence of Hildebrand in court on the trial of defendant, and that the testimony of Germaine and Kelley was admitted to show other robberies,—we have already disposed of. Besides, they could not be urged on a motion to acquit. The third objection was that there were two other indictments against the defendant and Hildebrand for robbery,—one for robbing Kelley and one for robbing Germaine. There is nothing in the testimony of the state or in this record showing these facts, and, if there are such indictments, they are not grounds for appellant's acquittal on this charge. The fourth ground was that there was no sufficient identification of the defendant connecting him with Hildebrand in the robbery. This was, in effect, a challenge to the general sufficiency of the evidence; that is, says, in effect, there is a total failure of evidence. There was no objection to the sufficiency of the evidence in any particular; for instance, that there was a failure to prove the specific kind of money as laid in the indictment, or the quantity or value thereof as laid in the indictment, which under this assignment of error appellant now asks us to consider. The appellant contends that the state

failed to prove, as alleged in the indictment, that appellant took "four dollars and twenty-five cents, *lawful money of the United States,*" of the value of four dollars twenty-five cents, from the prosecuting witness. The proof in this respect, as the prosecuting witness detailed the circumstances, was that Hildebrand's partner, after the prosecuting witness was shot down, went through the pocket of the prosecuting witness and took his money, while Hildebrand held the revolver on his head and threatened to blow his brains out. The direct question as to who took his money was also put to the prosecuting witness, "Who took your money?" He answered, "Hildebrand's partner, whether it was this man or not." The court knows that money is a thing of value. The word "money" imports value. The essence of the crime of robbery is forcibly and feloniously taking from the person of another, or from his immediate presence, any article of value, by violence or putting in fear. This motion is a general one, and only challenges the general sufficiency of the evidence; that is, says, in effect, there is a total failure of evidence. Upon a motion of this kind, the only question raised is whether there is any evidence tending to prove the crime charged, not whether the evidence fails in some particular matters. The record fails to disclose that the objection to the evidence in the particular matter, as to the kind, amount, and value of money, was called to the attention of the court, and in a case of this kind the motion should direct the attention of the court and opposite counsel to the precise point made and the grounds therefor. We quote with approval, and as decisive of this objection, from the decision of the supreme court of Oregon in the case of *State v. Tamler,* 19 Ore. 531 (25 Pac. 71, 9 L. R. A. 853). The defendants in that case were indicted for selling spirituous liquor without a license. The evidence was to the effect that Polly sold to one Maloy a drink of liquor

which the witness supposed to be whisky, and that Maloy
paid for the same. A witness by the name of Timothy
Maloy testified that he had purchased liquor at different
times in the saloon of the defendants and had paid for
the same. The contention on appeal was that there was
no sufficient evidence of the value of the liquor alleged to
have been sold; no sufficient evidence that the sale was
made to Timothy Maloy, named in the indictment; and
that there was no sufficient evidence that the liquor sold
was *spirituous* liquor. The court says:

" A cursory examination of this testimony would nat-
urally lead a court to think there was sufficient evidence
to be submitted to a jury, and while there may be a failure
in some particular, unless the particular instance in which
the failure occurs is pointed out, it would probably escape
attention."

In the opinion the court says:

" As this is an appellate tribunal, constituted to revise
and correct the errors committed by the trial court, it is
only when that court has acted, and the act is claimed to be
error and disclosed by the record, that such error becomes
the subject of our power and duties. The motion in
this case [a motion to direct an acquittal] is a general one
and only challenges the general sufficiency of the evidence,
that is, says, in effect, there is a total failure of evidence.
Upon a motion of this kind the only question raised is
whether there is any evidence tending to prove the crime
charged, not whether the evidence fails in some particular
matters. In a motion asking the court to direct an ac-
quittal, where it is claimed that the evidence is insufficient
to prove the crime charged, it ought to specify the particu-
lars in which it is claimed the evidence is insufficient unless
there is a total failure of proof; otherwise the attention of
the trial court will be directed to the evidence as a whole,
that is, whether there is any evidence upon which a verdict
may be founded, and wholly omit to consider the particu-
lar matter in which the alleged insufficiency consists, and
which is relied upon in this court and perhaps subsequent

research may have suggested. It is true, unless there is some evidence upon which a jury can found a verdict for the party producing it, such verdict ought not to stand. . . . But where there is some evidence tending in a general way to prove the offense charged, but its alleged insufficiency lies in some particular matter or specific objection which requires to be designated or specified to make apparent in what particular that insufficiency consists and to attract the attention of the court to it, it ought, as a general rule at least, to be specified in the motion of non-suit to be entitled to consideration in this court."

In *Edwards v. Carr*, 13 Gray, 238, SHAW, C. J., says:

" It is very important that no objection to a verdict be brought before this court by an exception which was not in some form taken at the trial, especially in cases where there is ground to believe that if it had been then brought to the attention of the judge and the adverse counsel, it might have been avoided by an amendment, or by a more specific direction by the judge, sustaining or overruling it. The party objecting would have the full benefit of his objection in matter of law, if well founded, either by a ruling in his favor, or by an allowance of the exception, and the rights of both parties be secure."

Quoting further from the Oregon case, that court says:

" The law should not permit a party to make a general motion, as in this case, and lie by without making the particular grounds of his motion known to the court, and take the chances of success on the grounds which the judge may think proper to put his ruling, and then if he fails to succeed with either court or jury avail himself of an objection which, if it had been stated, might have been removed. This works no injustice to a party, for if there be merit in his motion or objection he has the full benefit of it, and if there be no merit he certainly ought not to succeed. In the midst of a trial at *nisi prius* the judge is necessarily compelled to rule upon many questions of law without the opportunity for deliberation the importance of the questions demand, and it is but an act of justice to him that such rulings be not reversed unless his mind was

specifically drawn to the point upon which the reversal was asked and acted upon as deliberately as time and circumstances would admit. In this case how can we say that the court below committed an error in overruling the motion unless we knew upon what grounds he was asked to allow it. His attention was not called to the points upon which we are asked to reverse the judgment, nor was there any suggestion as to what counsel would have him hold. Had the court below been asked to sustain this motion upon the grounds argued before us, we cannot say how it would have ruled, and certainly before we can be asked to reverse this judgment it must sufficiently appear that the court committed some error justifying such reversal."

It is also urged as an error that the jury did not follow the instructions of the trial judge, and our attention is called to instruction No. 5 of the trial court. That instruction is as follows:

"Before you can convict the defendant, Edgar Hyde, of the crime charged, the prosecution must show, and you must be convinced beyond a reasonable doubt, that the defendant Edgar Hyde, acting in conjunction with John Hildebrand, on the 3d day of July, 1899, in the county of Pierce, Washington, did forcibly, feloniously, and by violence, and by putting the said George Hyde in fear, take from the person and against the will of said George Hyde *money of the United States of the value of four dollars and twenty-five cents.*"

Just preceding this instruction, as instruction No. 4, the court read to the jury, as a part of his instructions, the statute defining robbery (Bal. Code, § 7103), as follows:

"Every person who shall forcibly and feloniously take from the person of another, or from his immediate presence, *any article of value,* by violence or putting in fear, shall be deemed guilty of robbery."

The word "money" imports value. It is unnecessary to prove that the thing taken had a specific pecuniary value. If the value was merely nominal, that is enough. The prosecuting witness said: "He took my money." That means, in itself, that he took from him something of value. This court has decided (*State v. Johnson,* 19 Wash. 410, 53 Pac. 667), that in an information for robbery it is not necessary to allege the kind of money. In the motion to acquit the defendant, no complaint was made that the kind and amount of money was not shown. We have ruled that then was the time to make such an objection. From the evidence, and considering these two instructions together, the jury, as they did by their verdict, had the right to find that a thing of value, to-wit, money, was taken from the prosecuting witness forcibly and feloniously, by violence or putting in fear, and this is sufficient, in view of what we have said in passing on the motion to acquit defendant. At most, the instruction of the court as to the amount and kind of money was a harmless error, and on authority of *State v. Johnson, supra,* cannot now be considered.

The appellant undertook to set up an alibi and offered some testimony tending to show that he was in Tacoma at the time of the robbery. It must be remembered that the robbers were traveling about on bicycles and could move rapidly. The statement fails to disclose the distance between the place where the robbery was committed and Tacoma. It was, however, near Edison. The jury was acquainted with the locality, and had a right to form an opinion as to the time it would take the robbers to reach Tacoma. There was a conflict of evidence as to the whereabouts of the appellant at the time of the robbery, and it was for the jury to decide, on all the evidence, where the

truth lay. We have examined the evidence and it justifies the verdict.

The appellant filed a motion for a new trial, assigning errors of law occurring at the trial and excepted to, and that the verdict was contrary to the evidence. In this opinion we have held that the evidence was sufficient to sustain the verdict, and have passed adversely to appellant on all the assigned errors of law occurring at the trial. The further ground urged in the motion for a new trial was newly discovered evidence that could not be had at the trial, and which was sufficient to establish appellant's innocence. After the conviction of the appellant on October 4, 1899, Hildebrand, the accomplice, made an affidavit that on the 3d day of October, 1899, he (Hildebrand) pleaded guilty to the charge set out in the indictment; that defendant Hyde was not guilty of the crime charged because he, Hyde, was not present at the commission of said crime; that Hildebrand refused to testify in behalf of said Hyde upon the trial because by so doing, in his judgment, he would prejudice his own interest. Hildebrand also filed with the clerk of the court, on October 4, 1899, a statement, signed by himself, in which he says the defendant Hyde was not implicated in the robbery, and that he (Hildebrand) and another man robbed Hyde. The filed statement was an improper paper to be considered on the motion for a new trial. The affidavit of Hildebrand affirmatively shows that it is not *newly* discovered evidence. Impliedly it appears that appellant knew that Hildebrand would testify to his innocence, but that Hildebrand refused to do so because he would prejudice his own interest. There is no showing in the affidavit that Hildebrand on a new trial would testify to the matters he states in his affidavit and statement. New trials should not be granted on the uncor-

roborated statements of an accomplice.  *State v. Anderson,* 14 Mont. 551 (37 Pac. 1).

Under all the circumstances, and in view of the evidence in this case, we think the court properly denied the motion for a new trial.

The judgment of the lower court should be affirmed.

DUNBAR, C. J., and ANDERS, FULLERTON and REAVIS, JJ., concur.