(33 South. 196.)

No. 14,661.

## STATE v. ALBERT.

(Dec. 15, 1902.)

CRIMINAL LAW—NEW TRIAL—ABSENCE OF WITNESSES—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE.

1. During the trial of a criminal case, on suggestion of the accused that, he had just discovered new witnesses, subpœnas were placed in the hands of the sheriff for service. They were not served, and the fact became known to the accused before his case was closed. It was his duty to have brought notice of the fact to the court, and asked for a temporary postponement to have service made. Having failed so to do, and permitted the case to go to the jury without opposition, he is not in position to claim a new trial in order to have the testimony of said witnesses taken.

2. The court having ordered a hearing to be had upon the application of the defendant for a new trial, based upon the allegation of newly discovered evidence, it is his duty to cause those witnesses living in the immediate neighborhood to be present at the hearing, and subjected to examination and cross-examination. It is not the duty of the district attorney to summon them.

3. Though it ·be the rule that a new trial will not be granted in order to permit the introduction of evidence merely cumulative, the rule is not inflexible. The cumulative evidence, however, should be such as to impress the trial judge that, if added to the other evidence in the case, it would be likely to turn the scales in favor of the accused.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Pointe Coupee; L. B. Clairborne, Judge.

Jacob Albert, alias Bouline, was found guilty of manslaughter, and appeals. Affirmed.

Robert Semple and William C. Carruth, for appellant. Walter Guion, Atty. Gen., and Albin Provosty, Dist. Atty. (Lewis Guion, of counsel), for the State.

### Statement of the Case.

NICHOLLS, C. J. The defendant was indicted for murder by the grand jury, was found guilty of manslaughter on ·the 22d of October, 1902, by a jury, and sentenced to 20 years in the penitentiary. He has appealed, relying for reversal upon the refusal of his application for a new trial (filed October 29th), which was grounded on the alleged discovery of new evidence. In this application, which he supported by his own affidavit and that of Elmire Harris and Louis Burnett, he averred: That subsequent to his trial and conviction he had discovered new evidence which was material to the issue of said cause, and not merely cumulative, corroborative, or collateral. That prior to and on the trial of his cause he and his counsel used due diligence and every effort in their power to secure all testimony in his defense

that was material to the issue, and that the failure to discover said newly discovered evidence in time to use the same on the trial of said cause was not due to any lack of diligence on the part of petitioner or of his counsel.

That said newly discovered evidence was of such a nature as to produce on another trial an acquittal of petitioner.

That said newly discovered evidence went to the merits of the case, and did not rest merely on a technical defense.

That said newly discovered evidence was the testimony of Elmire Harris and Louis Burnett, both residents of the parish of Pointe Coupee.

That said Elmire Harris would testify on a new trial of said cause that on the day of said alleged homicide said witness was passing in front of the store of J. A. Dayries, walking on the levee, at the time when said difficulty took place in which petitioner was charged with having murdered said Ferdinand Scott.

That said witness would testify that she saw petitioner and said Ferdinand Scott standing on the gallery of the warehouse of said J. A. Dayries at the time when said difficulty commenced, and that she saw said Ferdinand Scott fire the first shot at petitioner, and that said first shot was fired before petitioner committed any overt act or made any hostile demonstration against said Ferdinand Scott.

That said witness would further testify that the first shot that petitioner fired at said Ferdinand Scott was fired when petitioner was retreating, and said Ferdinand Scott was pursuing petitioner, and firing continuously at petitioner.

That said Louis Burnett would testify on a new trial of said cause that at the time when said difficulty took place said witness was sitting on the front gallery of the store of J. A. Dayries, and heard pistol shots, and that said witness immediately looked in the direction from which the sound of said pistol shots came, and saw petitioner on the ground in front of the warehouse of said J. A. Dayries retreating from said Ferdinand Scott, and that said Ferdinand Scott was pursuing petitioner and firing at petitioner, and that said Ferdinand Scott fired two or three shots at petitioner while said Ferdi-

nand Scott was still on the gallery of said warehouse, and after petitioner had jumped off of said gallery and was retreating as aforesaid.

That this application for a new trial of said cause was not made for the purpose of delay, nor for the purpose of thwarting the ends of justice, but for the purpose of obtaining substantial justice on a second trial of said cause.

A trial was had upon the application for a new trial, and evidence adduced. The application was refused, and the judge assigned the following reasons:

"(1) After a careful consideration of the application for a new trial, together with the testimony and admissions offered on the hearing of same, I have arrived at the following conclusions: The application alleges the homicide to have been committed on the 23d day of September, 1902, and that the accused has been in jail ever since that date; that within two or three days after his incarceration he employed counsel; that he was indicted for murder on the 9th day of October, 1902, that on the 10th day of same month he was arraigned, pleaded not guilty, and his case was fixed for trial for the 21st day of October, 1902; that on said day the witnesses were called, and, both the state and the defense announcing themselves as ready for trial, the jury was then called, selected, and sworn, the indictment read to the jury, and the testimony proceeded with; that, after several witnesses for the state had been examined, counsel for the accused notified the court that there were two eyewitnesses to the homicide who had not been summoned; that no summons had been issued for them, as counsel had just learned for the first time that the parties (two women, Elmire Harris and Louise Elie) were witnesses. Counsel further informed the court that these two women lived within four miles of the courthouse, and that their presence could be readily secured, and asked that summons issue instanter for said two women. The court ordered the summons to issue, but declared that the trial could not be delayed. The hearing of witnesses was then proceeded with, and at the end of about one hour and a half the last witness of defendant had been heard, counsel for the accused declaring that they had no other wit-

nesses than the two women in question, and that they were not yet present. Thereupon the court ordered a recess of 20 minutes which was prolonged to 30 minutes. Court was then again called to order, and counsel for the accused announced that the two women were not present.

No further opposition was made to the proceeding. The trial of the case and the testimony was declared closed. The court ordered the case to be given to the jury by commencement of the argument. To this no exception or objection was made.

This application for a new trial is based on the declaration of newly discovered evidence; that is, the testimony of Elmire Harris (one of the women above mentioned) and that of a man by the name of Louis Burnett.

The fact that the accused was confined in jail was no reason, for he and his counsel being unable to inform themselves fully as to the names and residence of all the witnesses. There was nothing to prevent counsel from having free communication with the accused.

All of the parties and the witnesses lived in the immediate vicinity of the homicide, and all within five miles of the courthouse. Among these was the father of the accused, who was present at the Dayries store, where the homicide occurred, and at the time of the occurrence, as he testified on the trial. Full 10 days elapsed between the fixing and the trial of the case. I cannot feel that due diligence was used on the part of the accused, for every legal facility was given, and ample time was allowed.

This is certainly the case as to the woman Harris, and from an examination of the affidavit of the man Burnett and his testimony on cross-examination it is evident that, if he had been present at the trial and testified, his testimony would have only been cumulative, for he shows that the father of accused (who testified in the case) was with him on the side gallery when they heard the first shots, which were on the gallery of the warehouse, and that they could not see the parties, and that it was only after these first shots that they went on the front gallery, where they could see. These same facts were testified to at the trial by the father of accused and other witnesses, and the testimony of Burnett could only be cumulative.

And the important fact is that the man Burnett contradicts himself, for in his affidavit to the application for a new trial he swears that when the first shots were fired he was sitting on the front gallery of the Dayries store.

Whereas in his cross-examination he swears that he was sitting on the banisters of the side gallery, and that from where he was sitting he could not see what was transpiring on the front gallery.

Taking everything into consideration, I am constrained to refuse a new trial.

Defendant filed a bill of exceptions to the ruling of the court, in which he declared that, the court having overruled his motion for a new trial for the reasons stated in the written opinion and ruling of the court filed in the record, defendant excepted to the ruling for the following reasons:

(1) For the reasons stated in the motion of the accused for a new trial, on file in said record as aforesaid.

(2) For the reason that, as will appear from the note of evidence taken on the trial of said motion for a new trial, when one of said newly discovered witnesses, to wit, Elmire Harris, was ordered by the court to be summoned at the request of the accused, and a delay was granted, in order that said summons might be served, the sheriff of the parish of Pointe Coupee, as will appear from said note of evidence, did not summon said witness, but only sent a private messenger for her, said messenger not being under oath, nor made a deputy of the sheriff; and for the further reason that said witness had not been regularly summoned in compliance with said order of the court, was not made known to the accused or his counsel until it was too late to have said witness regularly summoned, and, his bill of exceptions having been submitted to the counsel for the state, is now respectfully submitted to the court for its signature.

The judge signed the bill without comment.

On the trial of the motion for a new trial it was admitted by counsel of both sides that, after the jury had been sworn, and after several witnesses for the state had been examined, counsel for the accused notified the court that he had just learned for the first time of the existence of two material witnesses,

both women, who were eyewitnesses, to wit, Elmire Harris and Louise Elie. He gave the court to understand that they lived within about four miles from the courthouse, and asked that summons for said two witnesses issue instanter.

Thereupon the court ordered that summons issue instanter for said witnesses, stating at the same time that the nonappearance of said witnesses would not delay the trial.

The examination of witnesses then proceeded, and at about the end of one hour and a half the last witness had been examined on the part of the defense, with the exception of the two above named. The court was then informed that these two witnesses had not appeared. The court then ordered a recess of 20 minutes. This recess was prolonged fully 30 minutes. The court having resumed its session, it was again announced that said witnesses had not appeared. Thereupon the court ordered the case given to the jury.

It was admitted that at the end of the recess of court above referred to, and just before the case was given to the jury, it was discovered that, instead of the witnesses above named having been regularly summoned according to law (by the sheriff or one of his deputies), the sheriff had given the summonses to a private messenger, a colored man named Guillaume, and intrusted him, at his request, with the delivery of the summonses. It was admitted that said Guillaume was the party who brought the message about the two witnesses above referred to, and that he told the sheriff that he knew where they were, and could find them at once. It was admitted that said Guillaume was the father of the deceased wife of the accused, but that the accused had no children by his said deceased wife, who had been dead for a number of years.

It was admitted that said Guillaume was not sworn as a deputy sheriff, and that neither the accused nor his counsel nor the court knew that he had been intrusted with the delivery of the summonses in question, nor had they consented that the said summonses be served otherwise than according to law. It was admitted that Louise Elie, above referred to, was not one of the witnesses mentioned in the motion for a new trial as a newly discovered witness. It was admitted that Louis Burnett (one of the witnesses named

in the motion for a new trial) resides and did reside at the time of the trial of this cause on the plantation of J. A. Dayries, and that the alleged homicide took place at the store, also situated on said plantation, and that said Burnett resided on said plantation at the time of the alleged homicide.

The testimony of Louis Burnett was taken on the trial of the motion for a new trial. He testified that he resided on Mr. Dayries' place, on which the homicide was committed. He was at the store of J. A. Dayries when the shooting took place. He heard the first shots, but did not see them. When the first shots were fired, he was sitting on the banisters on the side gallery. From where he was sitting at the time of the firing of the first shots he could not see what was transpiring on the front gallery; that is to say, on the warehouse gallery. Marcelin Albert, the father of the accused, was on the side gallery, where he was standing a few feet from him, talking to his brother-in-law. He got to the front gallery before Burnett did. When Burnett heard the first shots, he went immediately to the front gallery, and saw what is stated in the motion for a new trial as sworn by him.

It was admitted that Elmire Harris resided, when the summons issued for her, on the plantation adjoining that of the man Guillaume, to whom the summons was intrusted.

It is admitted that at the time of the homicide the accused resided within a mile of the party named Guillaume, referred to in the foregoing. It was admitted that from the time of the homicide to the present time the accused has been continuously in the parish jail without bond.

Robert Semple, sworn, testified that from the time he was employed in the case—which was a day or two after the homicide, and some time before the trial (about three or four weeks)—he used every diligence to find out every person who knew anything at all about the homicide, and to secure all witnesses who were material to the defense of the accused.

### Opinion.

We do not feel authorized to set the verdict aside, and order a new trial.

Appellant failed to do several things which

the occasion called for. When it became known to him during the trial that, although summonses had been placed in the hands of the sheriff for service upon the alleged newly discovered witnesses, he. had not done so, but sent them out by Guillaume, the father-in-law of the accused, he should have brought this fact at once to the knowledge of the court, and asked for "a postponement" under the circumstances, in order to have service made. Had the judge refused to do this, he should have excepted, and taken a bill of exceptions. In the next place, when the court permitted a hearing upon the application for a new trial the defendant should have caused the witness Elmire Harris to be present, so as to give her testimony and be subjected to cross-examination. This was not done, though the witness was near at hand. It was not the duty of the district attorney to have forced the attendance of the witness.

Independently of this, the court states that the testimony of Burnett, which was taken on the hearing of the application for a new trial, was merely cumulative. We have no knowledge of what evidence was adduced on the trial of the cause. He knew what it was, and saw and heard the witnesses testify. He was in a position to judge what effect, if any, the testimony of the alleged newly discovered witnesses would likely have had upon the jury had it been introduced, and what it would be likely to have upon a second trial. His refusal of a new trial indicates very clearly his opinion on that subject.

In the case of Railroad Co. v. Crayton, 12 South. 273, the supreme court of Mississippi, after defining what is meant by cumulative and what by corroborative evidence, and the difference between the two, thus refers as follows to the former kind in connection with a new trial:

"We have not overlooked the fact that the rule as to the exclusion of cumulative evidence is not inflexible and without exception. There can be no doubt that the court, in the exercise of a sound discretion, may grant a new trial on the discovery of new evidence which is strictly cumulative; but the instances in which such exercise of legal discretion would be proper will be found rare indeed. Where the evidence upon which a

case was originally tried was unsatisfactory, and the real issue was left in doubt, and newly discovered evidence is offered which will clearly put an end to the doubt, and finally and conclusively dispose of the litigation certainly and otherwise than on the first trial, the duty of the court would be to award the new trial. But we find nothing in the newly discovered evidence which will bring it within the class of exceptional cases. It is merely cumulative, and simply increases the weight of the appellant's evidence, and would on another trial, when introduced, leave the cause in the atmosphere which now envelops it."

While we think this view of the matter is too exacting in its requirements as to the weight of the cumulative evidence which must be offered in support of an application for a new trial, we think it should at least be such as would impress. the trial judge with a decided belief that, if added to the other evidence in the case, it would be likely to turn the scales in favor of the accused.

When a court refuses a new trial on the ground that the newly discovered evidence offered is merely cumulative, it is tantamount to saying that, were it offered in a new trial, the result of the second trial would not, in its opinion, be different from that on the first.

We would not be warranted in reversing the verdict and ordering a new trial. For the reasons assigned, the judgment appealed from is hereby affirmed.