[Crim. No. 1088. First Appellate District, Division Two.—March 14, 1923.]

## THE PEOPLE, Respondent, v. JOHN LAKENAN, Appellant.

**[1]** NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE CHARACTER—APPEAL.—Because newly discovered evidence is cumulative is not at all times, in and of itself, a sufficient reason for denying a motion for a new trial. New evidence, although cumulative, might be of such overwhelming character as to render a different result certain or probable, and in such a case a new trial should be granted. But whether the evidence is of this character is not a question of law, but for the judgment of the trial judge, whose discretion will not be interfered with by an appellate court except in cases of manifest abuse.

**[2]** CRIMINAL LAW — GRAND LARCENY — ALIBI—NEW TRIAL — INSUFFICIENT AFFIDAVITS.—On this appeal from a judgment of conviction of the crime of grand larceny, the appellate court could not say that the contents of the two affidavits presented by defendant on his motion for a new trial, to establish his defense, an alibi, were of such an overwhelming character as to render a different result certain or probable, or that the showing made was of such a character as to make it manifest that the case would result differently on a new trial.

**[3]** ID.—JURISDICTION—PASSAGE OF MONEY IN SISTER STATE.—In this prosecution for grand larceny, the fact that the money was passed in a sister state did not make the verdict of conviction contrary to law.

1. What is cumulative evidence within rule excluding it when offered in support of motion for new trial, note, **Ann. Cas.** 1913D, 157.

Cumulative evidence as ground for new trial in criminal cases, note, **46 L. R. A. (N. S.)** 903.

APPEAL from a judgment of the Superior Court of Alameda County. George Samuels, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank M. Carr and Harry C. Morrison for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, Ezra W. Decoto, District Attorney, and Charles Wade Snook, Deputy District Attorney, for Respondent.

STURTEVANT, J.—Under an information filed by the district attorney the defendant was accused of grand larceny. The jury returned a verdict finding the defendant guilty as charged in the information. The defendant moved for a new trial; the motion was denied, and the defendant has appealed.

The fifth point made by the appellant is the one which he stresses in his brief and in his argument. In that point he claims that the trial court erred in denying his motion for a new trial in the face of the fact that he presented two affidavits which tended to establish his defense, an alibi. The correctness or incorrectness of the ruling of the trial court depends upon a consideration of the contents of the affidavits in connection with other facts contained in the record.

On the morning of the third day of October, 1921, the prosecuting witness, W. G. Woolfrey, arrived in San Francisco from Moose Jaw, Canada. After he had had his breakfast he stood in front of the Ferry building in San Francisco and a man approached him and passed the time of day, and finally suggested to Mr. Woolfrey that he take a trip to Golden Gate Park, and at the same time pointed out the street-car which Woolfrey should take. After Woolfrey got on the car he was approached by a man who introduced himself as L. H. Sterling. Sterling and Woolfrey spent the day in Golden Gate Park, and later went to the Sunset Hotel, on Market Street. The next morning Sterling and Woolfrey had breakfast together and then they crossed the bay for the ostensible purpose of seeing the wild ducks on Lake Merritt. After they had arrived in Oakland,

and as they were passing the Hotel Oakland, they saw a man standing in the doorway, and Sterling remarked: "Oh, by the way, there is someone over there I know, someone from Rochester." That man was subsequently introduced as Chetwell. Thereafter such proceedings were had that Woolfrey was led to believe that he could make a large sum of money through the instrumentality of his new acquaintances by investing on the stock exchange. Chetwell claimed to be possessed of inside information and took charge of placing the orders. Two papers, or vouchers, were made out, one in Sterling's name and one in Woolfrey's name, and Chetwell pretended to present the same to the exchange in Oakland. From time to time during the proceedings Chetwell would desist from saying something, or doing something, remarking at the time, "There is my auditor, and he must not know anything about it." Who the auditor was the record does not show. As a part of the general scheme it was claimed that Chetwell had been transferred to Reno and it thereupon became necessary for Sterling and Woolfrey also to go to Reno. On October 25th, pursuant to previous arrangement, Chetwell, Sterling and Woolfrey were at Reno for the purpose of finishing the business. A disagreement arose as to who should take the moneys to the exchange and draw down the winnings. Presently it was agreed that Sterling should go to the exchange and bring a man from the exchange to verify the fact that the individuals who had made the stock purchases were responsible financially. He went out and in a short time returned with a man purporting to come from the exchange. It was claimed by Woolfrey that the individual who returned with Sterling was the defendant, John Lakenan. Whoever the individual was, when he came into the room he had the two vouchers in his possession which Sterling and Woolfrey had signed in Oakland when they made their bid on the stock. To that man Sterling and Woolfrey exhibited their moneys and later delivered to him their moneys, which he took away with him, saying: "You come over in about twenty minutes and it will all be refunded to you with the winnings."

The money was not seen again. The representative of the exchange was not seen again in Reno, and the other actors dispersed. Woolfrey went from Reno to Portland, where

he reported the matter to the police; the police sent him to Oakland, where he reported the matter to the Oakland police, and the Oakland police commenced their investigation. In the meantime Woolfrey remained in Oakland. Toward the end of November, while he stood at the railroad station at Fourteenth and Franklin, he was approached by Victor A. Dunn, who introduced himself as an attorney, and stated that he would undertake to recover Woolfrey's moneys on a contract which he wrote out and which provided that the attorney should receive fifty per cent of the moneys recovered as his compensation. After Mr. Dunn had obtained his contract, and a short time before the twenty-first day of November, 1921, he asked the complaining witness to go with him to Fabiola Hospital to see a man who was there and to see if the man could be identified as one of the alleged conspirators. When they went to the hospital Woolfrey went into room 18; Mr. Dunn's stenographer, a young lady, remained outside of the door, and Mr. Dunn several yards away from the door down the hallway. When Woolfrey went into the room there was a man in bed propped up with pillows. Woolfrey said to him, "How are you?" the patient remarked, "I think you have made a mistake," whereupon Woolfrey replied, "Probably I have," and left the room. On the trial he testified that he was positive that the man in the bed was the man he had seen in Reno and the man who had obtained his money. He also testified that on the preliminary examination he had been asked the question and had answered, "You weren't sure the first time, weren't sure the second time? A. Not positive." He further testified on the first visit to Fabiola Hospital he thought the man he saw in room 18 was the man he had seen in Reno, but he did not want to make a mistake; he wanted to be sure. He was not positive. On the afternoon of the same day the witness again went to the hospital with Detective Edward O'Donnell. The detective held a warrant for the arrest of the defendant upon his identification. Regarding that visit the witness testified that he and the officer went into the room where the defendant was in bed and that afterward he told the officer he was almost positive that the defendant was the man. The officer testified that during that same evening Woolfrey told him he thought the defendant was the man. On the following day the witness and Officer Flynn went

to the hospital. On that occasion the witness identified the
defendant as the man who had received the witness' money
at Reno, and the defendant was placed under arrest. The
witness testified further that it was not until the time of
the preliminary examination that the witness recalled to his
own mind that the defendant was not only the man who had
taken his money at Reno, but was also the man who had
approached him at the ferry depot and had suggested to
the witness that the witness visit Golden Gate Park. One
of the main defenses which the defendant presented at the
trial was an alibi. In support of his alibi he took the stand
and testified in his own behalf. He also produced his wife
and daughter supporting his statement that he was in Oak-
land on the twenty-fifth day of October, 1921, the date that
the prosecution claimed that Woolfrey had delivered his
money into the hand of the defendant at Reno. In support
of his motion for a new trial the defendant read the affidavit
of Ralph Lee. In that affidavit the affiant averred "That
on the twenty-fifth day of October, 1921, affiant was engaged
in business at the town of Hayward in the said county of
Alameda, state of California. That on the evening of said
twenty-fifth day of October, 1921, your affiant saw and per-
sonally talked with the above-named defendant, John Lake-
nan at affiant's place of business in the town of Hayward,
county of Alameda, state of California." The affidavit does
not contain any further facts tending to fix and identify
the date of that meeting. The defendant also tendered the
affidavit of T. R. Rogers, his son-in-law, who was in Mendo-
cino County at the time of the trial. In that affidavit the
affiant avers that the affiant and "the above-named Lakenan
during the months of October and November, 1921, resided
at No. 25 Monte Vista Avenue, Oakland, California, that
affiant saw and talked to the said John Lakenan practically
every day during the month of October, 1921, and particu-
larly on the twenty-fifth day of October, 1921, affiant saw
and talked to the above-named defendant, John Lakenan,
in the city of Oakland, county of Alameda, state of Cali-
fornia." Neither does that affidavit contain any additional
facts fixing and identifying the particular date.

The motion for a new trial was denied. On the hearing
of the motion the trial judge pointed out that the above
affidavits were cumulative. The respondent urges the same

point at this time. In reply the appellant contends that merely because the evidence was cumulative was not a sufficient ground for denying him a new trial. (*People* v. *Lapique,* 136 Cal. 503 [69 Pac. 226].)

[1] It may be conceded that simply because newly discovered evidence is cumulative is not at all times, in and of itself, a sufficient reason for denying a motion for a new trial. For it is evident that new evidence, although cumulative, might be of such overwhelming character as to render a different result certain or probable, and in such case a new trial should be granted. But whether the evidence is of this character is not a question of law, but for the judgment of the trial judge, whose discretion will not be interfered with by an appellate court except in cases of manifest abuse. (*Oberlander* v. *Fixen & Co.,* 129 Cal. 690, 692 [62 Pac. 254].) In *People* v. *Buckley,* 143 Cal. 375, at page 392 [77 Pac. 169, 176]), concerning this point, the court said: "A new trial should not, however, be granted upon the ground of newly discovered evidence unless the showing as to such newly discovered evidence is sufficiently strong to render a different result probable.

"The question as to whether such a showing' is made is one that is addressed to the sound legal discretion of the trial court, and the action of that tribunal in regard thereto will not be disturbed, except in cases of manifest abuse." In *People* v. *Sing Yow,* 145 Cal. 1, at page 4 [78 Pac. 235, 236], the court said: "The question as to the effect upon the case of the newly discovered evidence is from its nature peculiarly one that is addressed to the discretion of the trial court, and, of course, should be determined by that court with a full realization of the responsibility involved, and the motion should undoubtedly be granted where the showing is such as to make it apparent to the trial court that the defendant has, without fault on his part, not had a fair trial on the merits, and that by reason of the newly discovered evidence the result would probably be, or should be, different on a retrial. But unless the appellate court can plainly see that this discretion has been abused, that the showing made was of such a character as to make it manifest that the case would or should result differently on a new trial, in view of the newly discovered evidence, the order of the trial court

refusing a new trial will not be disturbed. (*Oberlander* v. *Fixen & Co.*, 129 Cal. 690, 692 [62 Pac. 254].)''

[2] Turning back to the affidavits of Ralph Lee and T. R. Rogers and looking at them separately, or considering them together in the light of the rest of the record, this court cannot say that the contents are of such overwhelming character as to render a different result certain or probable, or that the showing made was of such a character as to make it manifest that the case would result differently on a new trial. Under these circumstances we cannot say the trial court erred in denying the appellant's motion for a new trial.

The appellant makes the point that the verdict is contrary to the evidence. It suffices to state that we have read the transcript from cover to cover. The prosecution introduced evidence which, if the jury believed it, covered each and every element of the offense alleged against the defendant.

[3] Because the money was passed at Reno in the state of Nevada a point is made that the verdict is contrary to law. The point is without merit. (Pen. Code, sec. 27; *People* v. *Chapman*, 55 Cal. App. 192 [203 Pac. 126].)

The appellant complains of certain rulings of the trial court arising during the course of the trial. We find not a scintilla of error in this connection. Such rulings were wholly impartial and, with the assistance of counsel for the plaintiff and counsel for the defendant, the case was fully presented by each side.

The court instructed the jury regarding the acts and declarations of co-conspirators. The appellant contends that the instruction was not only erroneous and had no application to the defense on which the defendant was on trial, but was calculated to confuse and mislead the jury in considering the testimony. It is not necessary for us to go further than to state that the instruction was directly pertinent to the theory of the case as stated by the prosecution, and there is nothing in the instruction tending in the least to mislead the jury, or to cause the members to give consideration to collateral matters.

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.