(No. 5846.   May 19, 1932.)

STATE, Respondent, v. SETH LEE MORRISON, Appellant.

[11 Pac. (2d) 619.]

Wm. M. Morgan and F. M. Kerby, for Appellant.

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Respondent.

GIVENS, J.—Appellant, charged with murder in the first degree, was found guilty of manslaughter, and appealing from the judgment of conviction and the order overruling his motion for new trial, assigns as error the insufficiency of the evidence, erroneous instructions as to manslaughter, *corpus delicti* and flight, and urges that newly discovered evidence demands a new trial.

The appellant and one Hamilton had been staying for some time at the Carpenter ranch about four miles below Yellow Pine on the East Fork of the Salmon River. Shortly before the murder of the deceased, Maples came to the same place and was likewise staying there. All parties agree that the night before the killing, September 17, 1930, Maples and Hamilton went to Yellow Pine, had some drinks (moonshine), and returned some time during the night. From there on, the stories as told by Hamilton, the only eyewitness to the tragedy other than appellant, and appellant diverge and differ.

Hamilton, in effect, stated that all parties went to sleep, and in the morning appellant prepared some coffee, but when he, Hamilton, started to drink it, it was bitter, and he threw it out of the door of the cabin. Appellant ordered him out of the house, and told him to sit on an oil can a few feet from the door, and then to call the deceased, which Hamilton did, and that appellant, making remarks that the deceased was a son-of-a-bitch and stool-pigeon, ordered him to sit on the can alongside of Hamilton, and thereupon shot him. Appellant compelled Hamilton to drag deceased's body into a little ditch near the house and then told Hamilton to catch a horse and ride to Yellow Pine, and tell them that Maples had shot himself by accident. Hamilton also stated that appellant said he was going to kill some other parties at Yellow Pine. Hamilton caught a horse, rode to Yellow Pine, and told people there that appellant had killed Maples.

The appellant's story is to the effect that when Maples and Hamilton returned from Yellow Pine, both were intoxicated; that Hamilton, calling him names, told Maples to go upstairs and go to bed, then forced appellant to take several drinks of whisky with him, and they sat and talked until early in the morning, after which time appellant was intoxicated, and did not know what happened; that later, Hamilton told him that Maples had been killed and they would have to get out of there. That the next thing appellant remembered, he was on the side of the hill with his horse tied to a tree and a Remington rifle was hanging on the

saddle-horn; that he wandered around for some time, brought in the horse, and the rifle was gone.

The morning after the killing, Hamilton returned with the officers, who, unobserved by appellant, from positions on the sidehill and among the trees, watched appellant unsaddle the horse referred to by him, and approach the cabin, looking in different directions, and that they waited some time to see if anyone else was there, and finally arrested defendant. There was testimony by the officers to the effect that Hamilton, at the time of the arrest, and after appellant was in custody, made the statement in the presence of appellant that he, appellant, had killed Maples, and that appellant did not deny it. Appellant testified that he did not hear these statements, though he was close enough to have heard them. Appellant also argues as a reason for not denying it, that after his arrest, he, appellant, started to talk, and the sheriff told him to keep still, which situation was corroborated by other witnesses, and that consequently he did not talk. The jury were justified in drawing different conclusions from the above, favorable or unfavorable to the defendant, as they were impressed by the testimony.

The body was found in a ditch where Hamilton said he had placed it at appellant's instigation, covered with a canvas.

As possibly furnishing proof of motive, the state produced evidence that some time before the killing, appellant told Hamilton that he thought that deceased was trying to double cross him in regard to driving a tunnel in a mine for one Hennessey, the purport of which was denied by appellant.

Appellant urges that Hamilton's story is so improbable and inconsistent that no one should believe it. It is no more inconsistent that appellant's own statements. Both appellant and Hamilton testified fully, were cross-examined at length, and the jury saw their demeanor and heard all the testimony of both men, and there is no question but that one or the other killed Maples. The sole issue is, which one?

■ Appellant also contends that Hamilton's testimony is not worthy of belief because at the preliminary hearing he testified that they had not drunk whisky at Yellow Pine, while at the trial, he testified that they had. This was a matter for the jury, fully presented to them, and under instructions not questioned except as hereafter noted, the jury has resolved the conflict in the evidence in favor of the conclusion that appellant fired the fatal shot.

■■ The court instructed the jury that the defendant might be found guilty of manslaughter, which appellant contends is error because there is no evidence of manslaughter. This court has repeatedly held that upon a charge of murder in the first degree, the jury may find a defendant guilty of manslaughter, even though there is no evidence to show the lesser rather than the greater crime. Consequently there was no error in this instruction. (*State v. Schieler*, 4 Ida. 120, 37 Pac. 272; *State v. Alcorn*, 7 Ida. 599, 97 Am. St. 252, 64 Pac. 1014; *State v. Phinney*, 13 Ida. 307, 12 Ann. Cas. 1079, 89 Pac. 634, 12 L. R. A., N. S., 935. See, also, *State v. Smailes*, 51 Ida. 321, 5 Pac. (2d) 540.) Furthermore, there was evidence from the defendant himself, which might well justify such a verdict under the instruction given as to the effect of intoxication on intent, being a necessary ingredient of murder in the first degree. The defendant testified as follows:

"Q. As a matter of fact after you were so drunk, you do not know anything about what happened—whether you or Hamilton shot Maples.

"A. I do not remember. But, I do not think I did, for, as I said before I would have heard the gun fire."

Certainly if appellant shot deceased when he did not know what he was doing, he would at least be guilty of manslaughter.

■ The court instructed the jury with respect to *corpus delicti* as follows:

"You are instructed that in all criminal cases the State is called upon to prove what is known in law as the *corpus*

*delicti* which in plain English means: That a crime has been committed, and that the defendant committed it. . . . . "

Appellant criticises this instruction apparently because it contains the phrase: "and that the defendant on trial committed it." Similar language to the same effect has been upheld in the following cases: *State v. Sullivan*, 34 Ida. 68, 17 A. L. R. 902, 199 Pac. 647; *State v. McClurg*, 50 Ida. 762, 300 Pac. 898. Conceding that *corpus delicti* means only that a crime has been committed, the fact that the court instructed the jury not only as to that, but also that the state had to prove that defendant committed it, is certainly not prejudicial to defendant.

The court instructed as to flight as follows:

"You are instructed that the flight of a person immediately after he has been accused of the commission of a crime, or after a crime has been committed with which he is charged, is a circumstance not sufficient of itself to establish his guilt, but a circumstance which the jury may consider in determining the probabilities for or against him— the probability of his guilt or innocence. The weight to which this circumstance is entitled is a matter for the jury to determine in connection with all the facts and circumstances shown in the evidence.

"The flight of a defendant in a criminal case may or may not be considered as a circumstance tending to prove guilt, depending on the motive which prompted it—whether a consciousness of guilt and pending apprehension of being brought to justice caused the flight, or whether it was caused from some other and more innocent motive."

Appellant urges that the instruction presupposes that the defendant did flee. A similar instruction was approved in *State v. Lyons*, 7 Ida. 530, 533, 64 Pac. 236, and when the entire instruction is read, together with all the other instructions given, the jury could not have been misled to the effect that the court was instructing them as a matter of fact, that defendant had fled, though the instruction might have been more carefully worded.

As said in *State v. Jurko*, 42 Ida. 319, 245 Pac. 685, 689:

"If the instructions taken as a whole are substantially correct and the jury could not have been misled to the prejudice of the defendant, the giving of an erroneous instruction is not error. (*State v. Silva*, 21 Ida. 247, 120 Pac. 835; *State v. Marren*, 17 Ida. 766, 107 Pac. 993; *State v. Neil*, [13 Ida. 539, 90 Pac. 860, 91 Pac. 318], *supra; State v. Bond*, 12 Ida. 424, 86 Pac. 43; *State v. Wetter*, 11 Ida. 433, 83 Pac. 341; *State v. Rice*, 7 Ida. 762, 66 Pac. 87; *State v. Corcoran*, [7 Ida. 220, 61 Pac. 1034], *supra; People v. Warren*, 130 Cal. 683, 63 Pac. 86.)"

The instruction held erroneous in *State v. Collins*, 292 Mo. 102, 237 S. W. 516, cited by appellant, did not contain the qualifying and admonishing clauses contained in the latter portion of the instruction given herein. The instruction given carefully contained the safeguards which *People v. Jones*, 160 Cal. 358, 117 Pac. 176, held should be in such an instruction as to the point urged against the instruction herein. The same is true with regard to *State v. Osborne*, 54 Or. 289, 20 Ann. Cas. 627, 103 Pac. 62.

In *Sprouse v. State*, (Okl. Crim. App.) 3 Pac. (2d) 918, the court criticised this portion of an instruction:

"Evidence has been introduced in this case relative to the conduct of the defendant in leaving this community after the injury complained of."

No such language appears in the instruction herein. The latter part of the instruction therein was not criticised, and is quite similar to the one given herein.

If *State v. Lyons*, *supra*, be not sufficient to justify the instruction on flight given above, similar language has been sustained in the following cases: *Thomas v. State*, 129 Ga. 419, 59 S. E. 246; *Terrasas v. State*, 25 Ariz. 476, 219 Pac. 226.

In support of a motion for new trial, appellant filed three affidavits, one to the effect that on the day of the homicide, C. T. Barringer was camped on the South Fork of the Salmon River, and Hamilton passed him on such

day, appeared cool and free from excitement, and did not tell him of the killing. Barringer stated in the affidavit that he would be available in case of a new trial, and that he would testify to this effect. Conceding that such testimony would be of value as evidence, though just how, is extremely doubtful (*Gibbs v. United States*, 7 Ind. Ter. 182, 104 S. W. 583; *Marsh v. State*, 16 Ala. 597, 80 So. 171; *In re Clogston's Estate*, 93 Vt. 46, 106 Atl. 594; *Wheat v. State*, 38 Okl. Crim. 119, 259 Pac. 279), the record discloses that counsel for defendant knew of this testimony before noon of the last day of the trial, and that the matter was not called to the attention of the court or a continuance asked to secure this witness, and that the trial lasted until late in the afternoon. A continuance was asked with respect to another witness, but this showing of diligence is insufficient to require a new trial with respect to this affidavit. (*Hall v. Jensen*, 14 Ida. 165, 93 Pac. 962; *State v. Hoagland*, 39 Ida. 405, 228 Pac. 314; *Martinatus v. People*, 223 Ill. 117, 79 N. E. 55; *Dupree v. State*, 56 Tex. Crim. Rep. 559, 120 S. W. 870; *State v. Hodoff*, 88 Wash. 413, 153 Pac. 377; *Simmons v. State*, 167 Wis. 36, 166 N. W. 313; *State v. Albert*, 109 La. 201, 33 So. 196; *State v. Sikes*, 149 La. 1073, 90 So. 409.)

Appellant also secured the affidavit of one Wayne Shappley, which affidavit was to the effect that about the middle of July, 1931, a few days after appellant's trial and conviction, he had a conversation with Hamilton at Yellow Pine, where Hamilton, talking about the killing, said:

"It was nothing but a drunken row. They got one fellow for it, but I was the trigger man."

The affidavit of Shappley did not state that he would be available to testify to that effect if a new trial were granted, or would so testify, which has been held a fatal defect in such a showing. (*State v. Hyde*, 22 Wash. 551, 61 Pac. 719; *Ives v. People*, 86 Colo. 141, 278 Pac. 792, 797.) Shappley's wife, Bessie May Shappley, made an affidavit that she heard Hamilton talking about the killing; that she

did not know what was said, but that her husband told her what the conversation was, after Hamilton went away, and that it was to the same effect as stated by her husband in his affidavit. This statement was hearsay, and it is not therein stated that she would be available as a witness or would testify to that effect in case of a new trial.

Appellant contends that the statement by Hamilton was a confession that he killed Maples. Minds might well differ, even if he made the statement, as to what was meant, and the affiant details no facts or circumstances with regard to the actual circumstances of the killing, and there is in the record the positive testimony by Hamilton that appellant killed the deceased.

In the first instance, a showing for a new trial is addressed to the sound discretion of the trial court, and in the absence of abuse thereof, his finding will not be disturbed. This affidavit does not discuss any of the circumstances surrounding the alleged conversation, and the trial court was justified in considering the absence of any earmarks of verity, coupled with all of the testimony given at the trial, the actions and demeanor of the witnesses at the 'trial, the facts and circumstances connected with the killing, discussed by the only two living parties present thereat, and that the jury believed Hamilton, at least to the extent that they concluded that it was the appellant, and not Hamilton, who fired the fatal shot. They may have likewise believed that defendant fired the fatal shot, though too drunk to know it.

In *State v. Morse*, 12 Ida. 492, 86 Pac. 53, this court held that where a witness for the prosecution, after conviction of the defendant, made an affidavit that he had testified falsely at the trial, still the court was justified in denying a new trial. This case has been followed in *Indian Fred v. State*, 36 Ariz. 48, 282 Pac. 930, 936.

In *State v. Fleming*, 17 Ida. 471, 106 Pac. 305, it is stated that unless it is clearly shown by the record that the trial court abused his discretion in refusing to grant a new trial,

the order will be sustained. This case has been cited with approval in *Talley v. State*, 18 Ariz. 309, 159 Pac. 59, 64, and *Indian Fred v. State, supra.*

From an exhaustive examination of a great number of cases upon the question of when by affidavit, after conviction, a new trial is sought on the showing that the principal, and in some cases, the only witness against the defendant, either stated to a third party that he testified falsely at the trial or by his own affidavit so admits, it is noticed that there is a marked tightening up adverse to granting new trials on such showing. (33 A. L. R. 550; 74 A. L. R. 757; 46 C. J. 231.)

California early held that such showing did not entitle a defendant to a new trial. (*People v. Tallmadge*, 114 Cal. 427, 46 Pac. 282.) This case has been followed in California and other states. (*People v. Lim Foon*, 29 Cal. App. 270, 155 Pac. 477, 483; *People v. Hewitt*, 101 Cal. App. 306, 281 Pac. 666, 667; *Ryal v. State*, 16 Okl. Crim. 266, 182 Pac. 253; *State v. Willberg*, 45 Nev. 183, 200 Pac. 475, 477; *Blass v. People*, 79 Colo. 555, 247 Pac. 177; *Ives v. People*, 86 Colo. 141, 278 Pac. 792; *State v. Dodge*, 124 Me. 243, 127 Atl. 899.)

In *People v. Shilitano*, 218 N. Y. 161, 112 N. E. 733, L. R. A. 1916F, 1044, is an interesting statement on this point by Justice Seabury, specially concurred in by Justice Cardozo, now a justice of the supreme court of the United States, then justice of the New York court of appeals. It follows:

"There is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of criminal law know well its untrustworthy character. . . . . .

"Great weight should attach to the opinion of the trial judge upon a motion of this character. His position upon the trial gave him all the opportunities for forming an opinion of the credibility of the witnesses that the jurors possessed. In addition to this he had before him the conflicting

affidavits and testimony presented upon the motion for a new trial. He used his experienced judgment and gave the matter his 'earnest consideration,' and concluded that the verdict of the jury was right and ought to be permitted to stand. Under the circumstances I think that this court should not interfere with the judgment. . . . . ''

The Shilitano case on this point has been widely followed and approved.

In view of the record before us and the authorities, it does not clearly appear that the trial court abused his discretion in denying a new trial. (*State v. Dodge, supra; State v. Hyde,* 22 Wash. 551, 61 Pac. 719.)

It will be noticed that Oklahoma is now quite in line with the other states. (*Yoder v. State,* 18 Okl. Crim. 637, 197 Pac. 848, expressly overruling *Chappell v. State,* 6 Okl. Crim. 398, 119 Pac. 139.)

The following authorities support the above conclusion: *People v. Lakenan,* 61 Cal. App. 368, 214 Pac. 1021; *Winsley v. State,* 69 Fla. 391, 68 So. 376; *State v. Poe,* 69 W. Va. 260, 71 S. E. 177; *State v. Barrick,* 60 W. Va. 576, 55 S. E. 652; *Rawlins v. State,* 128 Ga. 96, 54 S. E. 924; *State v. Hughes,* 78 Mont. 87, 252 Pac. 320; *State v. Birzer,* 126 Kan. 414, 268 Pac. 842; 33 A. L. R. 550; 74 A. L. R. 757; *State v. Wheat,* 166 Minn. 300, 207 N. W. 623; *Braswell v. State,* 170 Ark. 1192, 280 S. W. 367; *Dillard v. State,* 174 Ark. 1179, 298 S. W. 27; *Blass v. People,* 79 Colo. 555, 247 Pac. 177; *Smith v. State,* 148 Ga. App. 332, 96 S. E. 632; *Norwood v. State,* 28 Ga. App. 238, 111 S. E. 59; *Story v. State,* 28 Ga. App. 109, 110 S. E. 326; *Delong v. Commonwealth,* 198 Ky. 316, 248 S. W. 839; *State v. Dodge, supra; State v. Pittman,* 137 S. C. 75, 134 S. E. 514; *Nusser v. State,* 195 Wis. 375, 218 N. W. 185; *Wohlfert v. State,* 196 Wis. 111, 219 N. W. 272; *People v. Van Den Dreissche,* 233 Mich. 38, 206 N. W. 339; *State v. Phillips,* 109 W. Va. 94, 153 S. E. 111; *Thompson v. State,* 115 Tex. Crim. Rep. 530, 28 S. W. (2d) 153.

It is interesting to note how consistently Georgia has adhered to this rule.[1]

Judgment and order affirmed.

Lee, C. J., and Budge and Varian, JJ., concur.

LEEPER, J., Dissenting.—I am impelled to dissent by reason of disagreement with the majority as to the disposal of the assignment relative to the instruction on flight. The instruction was as follows:

"You are instructed that the flight of a person immediately after he has been accused of the commission of a crime, or after a crime has been committed with which he is charged, is a circumstance not sufficient of itself to establish his guilt, but a circumstance which the jury may consider in determining the probabilities for or against him—the probability of his guilt or innocence. The weight to which this circumstance is entitled is a matter for the jury to determine in connection with all the facts and circumstances shown in the evidence.

"The flight of a defendant in a criminal case may or may not be considered as a circumstance tending to prove guilt, depending on the motive which prompted it—whether a consciousness of guilt and pending apprehension of being brought to justice caused the flight, or whether it was caused from some other and more innocent motive."

The position assumed by the state is best expressed by these quotations from its brief: "There was no question, we apprehend, in the mind of the court, jury, counsel for the state or defendant, or of the defendant himself, *but that he did flee or* leave the scene of the crime. . . . . Therefore,

---

[1] *Snow v. State*, 14 Ga. App. 489, 81 S. E. 363; *Johnson v. State*, 158 Ga. 192, 123 S. E. 120; *Morrow v. State*, 36 Ga. App. 217, 136 S. E. 92; *Burnett v. State*, 36 Ga. App. 647, 137 S. E. 796; *Kennedy v. State*, 37 Ga. App. 161, 139 S. E. 119; *Rogers v. State*, 37 Ga. App. 627, 141 S. E. 221; *Miller v. State*, 166 Ga. 698, 144 S. E. 254; *Morgan v. State*, 38 Ga. App. 686, 145 S. E. 521; *Humphrey v. State*, 39 Ga. App. 406, 147 S. E. 402; *Butler v. State*, 42 Ga. 471, 156 S. E. 644.

there could be absolutely no question in the court assuming flight. . . . . Therefore, there was nothing to assume which was not proved and admitted fully. . . . . There is absolutely no question in this case but that the defendant fled.''

Counsel for the state squarely contends that the court assumed and had the right to assume the fact of flight, because it was an admitted, undisputed fact. The majority opinion does not sustain this position, but disposes of the matter in these words: ''The jury could not have been misled as to the effect that the Court was instructing them as a matter of fact that defendant had fled.'' It is with this conclusion that I disagree. Rather, do I incline to the view of the Attorney General that the court did assume the fact of flight, and that this decision must be based upon an answer to the question as to whether or not he had a right to do so.

The general rule is that it is reversible error for a court to assume the existence or nonexistence of any material fact in issue on which there is no evidence, or on which the evidence is controverted, or if undisputed, is such that different inferences might reasonably be drawn therefrom (16 C. J. 949, sec. 2328), and as stated by this authority, ''In charging a jury the separate elements essential to constitute the crime should be stated clearly to the jury in such a manner as not to render it possible for the jury to think that any disputed fact is thereby assumed to be true.''

This court has announced the same rule in *State v. Hines*, 43 Ida. 713, 254 Pac. 217: ''The court is not authorized to assume injurious facts against the accused in charging a jury.''

I will concede that the court in charging a jury may assume the existence of uncontroverted or admitted facts, where under the evidence there is no ground for a difference of opinion as to the existence of the fact, or if reasonable men could draw but one conclusion therefrom. However, as stated in 38 Cyc. 1669, ''The court can treat a fact as undisputed only when it is not only unopposed by direct evidence, but is not in conflict with proper inferences from other facts in evidence. Nor does it follow that because testimony

as to certain facts is uncontradicted it must necessarily be believed, or that the court is authorized to assume the existence of such facts in instructing the jury.''

The evidence in this case falls far short of that degree of indisputability which will authorize the assumption by the court of the important fact of flight. The only direct evidence of a leaving of the scene of the crime is that of the defendant himself and is as follows:

''The next I remember, Hamilton had hold of my shoulder shaking me and says, 'We have got to get out of here as Maples has been shot.' And I kind of rolled over and I was in a stupor and could not seem to get control of myself. Where Hamilton went after that, I do not know; but, I did not get off the bed. I never heard no shot fired or racket of no kind after I went out of my head. The next thing I remember, after Hamilton shaking me, I was on the hill above the house on the flat place, and when I came to, there was the horse tied up nicely to the tree and a thirty-five Remington hanging on the saddle horn, and some whisky left in the pint bottle on the other side of the horse. I sat there, and I thought it was really a bad dream when I come out of it. I could not get it in my head Maples was shot. I knew Hamilton told me that, but I did not know it was a fact; I did not know it had been done. I got up and untied the horse—my legs were queer—and I untied the horse and turned it loose and thought that it would go back to the ranch; and I thought I would walk and brace myself up with the fresh air; and I started down the mountain.''

The record discloses that after this episode the defendant returned to the cabin where the killing occurred, and remained in the immediate vicinity of it until apprehended. The only statement which he made to the arresting officers relative to his action was, in his own language, ''They asked me what I was doing and I said it was beyond me but I guess it looks like I was running away, but I guess that I came back.'' Witnesses for the state gave slightly different versions of this conversation, but the substance was the same.

Certainly the court was not justified in assuming that there was a flight, with all of the consequent implications of fact necessarily flowing therefrom, from this evidence. If the defendant did not knowingly leave the scene of the crime, and immediately upon regaining his senses returned to it, then there was no flight. Conceding that this might be a question for the jury, the evidence of flight cannot be said to be undisputed, as contended by the state, and the rule is offended by the court's assumption.

The instruction as a matter of law is open to the construction that it did assume flight.

"Error is also assigned on the charge of the court on the subject of flight. It is insisted that the facts did not warrant a charge on that subject, and that the charge was in itself an incorrect statement of the law. The facts, in our opinion, do not warrant a charge upon the subject of flight, without submitting to the jury for their determination the question whether in fact the evidence showed flight on the part of the accused. It appears that the accused, after the homicide and until his arrest, was no further from the scene than a few hundred yards, nor was he apparently making any effort to flee." (*Fountain v. State,* 149 Ga. 519, 101 S. E. 294.)

The qualifying second paragraph of the instruction, while probably a correct statement of the law, does not in anywise avoid the implication that the court assumed flight as a matter of fact, and in my opinion does not eliminate the objection urged against the instruction by appellant, nor does it overcome the rule as announced in *State v. Collins,* 292 Mo. 102, 237 S. W. 516:

"This instruction is clearly erroneous, even if there had been substantial evidence on which to base the same, for it reads as follows: 'Flight of the defendant unexplained is a circumstance to be taken into consideration with all the other facts and circumstances in evidence, . . . . '

"*It erroneously assumes, as a matter of law, that defendant had been guilty of flight.*"

It is true that the instruction complained of leaves it to the jury to determine *what motive prompted the flight.* It does not advise the jury that it is their duty to determine whether or not *there was flight.* It meets the objection urged in *People v. Jones,* 160 Cal. 358, 117 Pac. 176, 181, but it will be noted that in that case the court advised, "If you believe from the evidence in this case that the defendant did try to escape by flight . . . . ," which is exactly the element lacking in this case.

A situation similar in principle is involved in prosecutions for larceny in which possession of stolen property is a fact sought to be proved. In the recent case of *People v. Haack,* 86 Cal. App. 390, 260 Pac. 213, 916, the court of appeals of California passed upon the following instruction:

"The court instructs the jury that the recent possession of stolen property, unless satisfactorily explained, is a circumstance tending to show the guilt of the defendant, and must be taken with the other evidence in this case to determine his guilt or innocence," and in passing upon it the court said: "The instruction, taken alone, assumes the recent possession of stolen property on the part of the defendant. To make it a complete and accurate statement of the law it should have been predicated upon the jury believing from the evidence the fact of the recent possession of the stolen property by the defendant, and, then, that such possession, unless satisfactorily explained, was a circumstance tending to show the guilt of the defendant, and should be taken with other evidence in the case in determining the guilt or innocence of the defendant. The insufficiency of this instruction to properly advise the jury becomes apparent when we examine the instruction which we have called No. 2, given to the jury immediately after reading of instruction No. 1."

See, also, *State v. Ireland,* 192 Iowa, 489, 185 N. W. 35; *State v. Moeton,* 58 N. D. 191, 225 N. W. 318; *People v. Barnes,* 311 Ill. 559, 143 N. E. 445.

I recognize the rule long established that this court will not interfere with the verdicts of juries based upon substan-

tial, though conflicting evidence. However, a careful reading of the record has left an indelible impression of doubt upon my mind as to the guilt of the defendant. He was one of two persons who must have committed the homicide, and he was convicted almost entirely upon the evidence of the other party. There is no substantial proof of motive, and it is undisputed that the defendant became drunk upon liquor brought to him by the deceased and Hamilton, the other party. The showing made by appellant upon motion for new trial, while probably insufficient to justify us in disturbing the discretion of the trial court, further accentuates my doubt. As to the alleged flight, I cannot bring myself to believe that a drunken man in his stocking feet, who promptly returned to the scene of the crime and there remained until apprehended, ever fled within the proper meaning of that term, with knowledge of guilt and to avoid arrest. Of course I cannot say where the guilt lies; only that I am in grave doubt, and in such case it seems to me that errors committed during the trial must be more closely scrutinized and be accorded greater significance than if the sustaining evidence is satisfactory and convincing. A case quite in point is *People v. Goodwin,* 202 Cal. 527, 261 Pac. 1009, 1014, where an identical situation existed, one man having been convicted of murder upon the testimony of another, and an instruction upon flight having been given. The court said: "With a record as unconvincing against the defendant as the one in the instant case, any error in the matter of instructions or rulings upon evidence looms large." In a case as close as this, who can say that the instruction complained of did not have some or even decisive weight with the jury in its deliberations?

The judgment should be reversed and the case remanded for new trial.